MATTHEW D. KLEIFIELD, SB# 011564
mkleifield@lbbslaw.com
ROBERT C. ASHLEY, SB# 22335
rashley@lbbslaw.com
**LEWIS BRISBOIS BISGAARD & SMITH LLP**
Phoenix Plaza Tower II
2929 North Central Avenue, Suite 1700
Phoenix, Arizona 85012-2761
Telephone: 602.385.1040
Facsimile: 602.385.1051
Attorneys for Defendants Bridgestone Americas Tire Operations, LLC
and Bridgestone Americas, Inc.

# UNITED STATES DISTRICT COURT

# DISTRICT OF ARIZONA

| | |
|---|---|
| Jade Solis, A Single Woman; Rachel Corella, Individually and on behalf of her minor children JS and MS; Geraldo Quiroz, a single man; Justo SOLIS, a single man;<br><br>　　　　　　Plaintiffs,<br><br>　　　vs.<br><br>Bridgestone Corporation, a Japanese corporation; Bridgestone Americas, Inc., a Nevada corporation; Bridgestone Americas Tire Operations, LLC, a Delaware limited liability company; Wal-Mart Stores Inc. a Delaware corporation; John Does I-V; Jane Does I-V; ABC Corporations I-V; XYZ Partnerships I-V, Inc., Inclusive;<br><br>　　　　　　Defendants. | No. 4:10-CV-484-TUC-DCB<br><br>**DEFENDANT BRIDGESTONE AMERICAS, INC.'S AND BRIDGESTONE AMERICAS TIRE OPERATIONS LLC'S MOTION *IN LIMINE* TO LIMIT EXPERT TESTIMONY OF DENNIS CARLSON AND FOR RULE 104(a) HEARING**<br><br>(Assigned to Hon. David Bury) |

Defendant Bridgestone Americas Tires Operations, LLC ("Bridgestone Americas"), formerly known as Bridgestone Firestone North American Tire, LLC, hereby moves the Court *in limine* to exclude certain opinions of plaintiffs' tire expert, Dennis Carlson, pursuant to the standards established by *Daubert* and Federal Rule of Evidence 702. Carlson proposes to offer a host of design and manufacturing defect opinions addressed to the tire at issue, which have widely varying degrees of support and legitimacy. Bridgestone Americas does not request the wholesale exclusion of Carlson as a witness, nor does it

address all of his questionable opinions in this motion. Instead, this motion addresses only the weakest and most ill-founded opinions Carlson has disclosed. These are:

      1.      Carlson's Inadequate Testing Opinion;

      2.      Carlson's Belt Joint Defect Opinion;

      3.      Carlson's Skim Stock Aging Defect Opinion; and

      4.      Carlson's Nylon Cap Ply Opinion.

These opinions are unreliable, unsupported by valid methodology, and must be excluded. The simple facts are that Carlson cannot identify any legitimate foundation for these opinions, nor can he describe a logical or accepted process by which he arrived at them. The opinions are untested, without peer support, and contradicted by other available evidence. This Motion is supported by the following Memorandum of Points and Authorities and the Court's file, incorporated herein by reference.

## MEMORANDUM OF POINTS AND AUTHORITIES

### I. PLAINTIFFS' TIRE EXPERT DENNIS CARLSON

This motion focuses on the foundation and methodology by which Carlson's opinions were formed. His qualifications are not directly in issue. But Carlson's background is relevant to evaluating the context in which his proposed trial testimony has been developed. *See, e.g., Joiner v. General Electric Co.*, 78 F.3d 524, 532 (11th Cir. 1996); *Hopkins v. Dow Corning Corp.*, 33 F.3d 1116, 1125 (9th Cir. 1994). The facts show that the opinions at issue are not legitimate expert work product, but are instead only result-oriented advocacy.

Carlson was the "tire expert" whose exclusion was affirmed by the United States Supreme Court in the *Kumho Tire Co. v. Carmichael* decision. 526 U.S. 137 (1999). Beyond the *Kumho Tire* decision, Carlson is no stranger to court rulings, including decisions in this District, limiting or criticizing his testimony as is illustrated in the collection of orders and opinions attached hereto as Exhibit 1. *See Moore v. The Goodyear Tire & Rubber Co.,* 2011 U.S. Dist. LEXIS 59403 (N.D. Tex. Jun. 2, 2011) (Court finds, "A less scientific approach to arriving at a design defect opinion would be hard to



imagine" in excluding Carlson's cap ply defect opinion); *Siegel v. Sears, Roebuck & Co.*, No. 98-6097-CIV-UUB (S.D. Fla. Mar. 5, 1999) (Court finds Carlson's manufacturing defect theory unsupported and the remainder of his opinions "scant, highly speculative, and ultimately unconvincing"); *Carver v. Uniroyal, Inc.*, (unpublished), (Cal. Ct. App. Nov. 15, 1999) (Court finds "little basis" for Carlson's qualifications to render conclusions about rubber compounding and rubber bonding during the manufacturing process).

Moreover, as other orders and opinions in Exhibit 1 demonstrate, various courts have also called into question his litigation tactics. One court sanctioned Carlson, noting that his testimony was "inherently suspect" and "not credible," with "heavy reliance upon . . . hedging, 'weasel-worded' responses." *Griego v. Michelin*, No. CV 496-87, at 65, (S.D. Ga. Dec. 10, 1998). Another court required him to be redeposed, due to his evasive and unresponsive testimony. *Carr v. Cooper Tire & Rubber Co.*, No. 02-0151-CV, (25th Jud. Dist. Tex. July 6, 2004). Yet another sanctioned him for his repeated misuse of protected materials. *Nevil v. Ford Motor Co.*, 1999 WL 1338625 (S.D. Ga. 1999).

The fact of the matter is that Carlson is a full-time litigation consultant who can only be characterized as a professional witness.[1] Carlson has not been an employee of any tire company since 1987, when he left Michelin Americas Research & Development Corporation (MARC), a time at which his supervisor negatively reviewed his performance

---

[1] The opinions here, and the methodologies and reasoning behind them, were conceived and born in Carlson's litigation activities. The *Daubert* case law expresses significant skepticism toward methodologies generated and employed exclusively in litigation. *See, e.g., Johnson v. Manitowoc Book Trucks, Inc.*, 484 F.3d 426, 429 (6th Cir. 2007); *Smelser v. Norfolk S. Ry. Co.*, 105 F.3d 299, 303 (6th Cir. 1997) (noting that the conclusions reached <u>independent of litigation</u> provide "important, objective proof that the research comports with good science"); *Daubert v. Merrell Dow Pharm., Inc.*, 43 F.3d 1311, 1317 (9th Cir. 1995) (on remand), *cited in* Fed. R. Evid. 702, advisory committee's notes (finding that "one <u>significant</u> fact [to be considered in the admissibility analysis] is whether the experts are proposing to testify about matters growing naturally and directly out of research they have conducted <u>independent of the litigation</u>, or whether they have developed their opinions expressly for purposes of testifying") (emphasis added); *Indiana Ins. Co. v. Valmont Elec., Inc.*, 2001 WL 1823587, *6 n.5 (S.D. In. 2001) (recognizing that whether the opinions were developed for purposes of litigation is a relevant factor for the court to consider, and casting doubt on such expert testimony); *United Phosphorus, Ltd. v. Midland Fumigant, Inc.*, 173 F.R.D. 675, 679–87 (D. Kan. 1997) (where expert's opinions were developed for the purpose of testifying and he acknowledged that he developed the methodology "on his own," court held that expert's opinions failed to satisfy the reliability standard set forth in *Daubert*).



and deemed him ineligible for rehire consideration. (See Deposition of Dennis Carlson dated March 27, 2012, at pp. 20-21, relevant portions attached hereto as Exhibit 2). In the early 1990's, Carlson decided to focus his career on testifying as an expert against tire manufacturing companies. (See *id*. at pp. 18-19). Carlson admits that he has not been personally involved in any tire design or manufacturing activities for over twenty years. (See *id*. at p. 22). He admits that for the past decade or more, 100% of his consulting work has been spent serving as an expert in litigation-related matters, and in those matters he works for plaintiffs more than 95% of the time. (See *id*. at pp. 24-25).

## II.   THE DAUBERT ISSUES

The Supreme Court's decision in *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993), emphasized that Federal Rule of Evidence 702 requires trial courts to serve as evidentiary "gatekeepers" who must conscientiously screen expert testimony for relevance and reliability. This requires that the court ensure that such testimony constitutes "good science," *Id.* at 593, and that expert findings are sufficiently "derived by the scientific method" or otherwise "supported by appropriate validation." *Id*. at 590.

There is no question that the dictates of *Daubert* apply strongly and directly to the opinions at issue. In the subsequent decision of *Kumho Tire Co. v. Carmichael*, 526 U.S. 137 (1999), the Court abolished the distinction between scientific and technical evidence previously recognized by some courts and held that the opinions of a tire expert merited Rule 702 scrutiny.

The opinions addressed in this motion plainly must pass the reliability and validity tests of Rule 702. Regardless of *Kumho Tire*, these opinions are obviously about science and invoke scientific principles. Mr. Carlson claims to follow the scientific method in his tire analysis activities. (See Exhibit 2 at p. 11). Each of the opinions at issue purports to address a cause and effect relationship between certain physical or mechanical conditions and the failure of the tire. Such relationships must depend upon scientific principles and methodology that can be tested and which, if valid and reliable, can be peer reviewed and gain acceptance in a relevant scientific or technical community. Absent such testing and

acceptance, the opinions must be viewed as scientifically unsound and unreliable. Such is the case here.

In assessing the validity of an expert theory or technique, the Supreme Court in *Daubert* and *Kumho Tire* set forth a non-exclusive four factor test to be used in evaluating the admissibility of expert testimony: (1) Whether the theory can be and has been tested. (2) Has the theory been subjected to peer review and publication? (3) What is the known or potential rate of error? (4) Is the theory generally accepted? *Daubert*, 509 U.S. at 593–95; *Kumho Tire*, 526 U.S. at 149–50; *see Johnson v. Manitowoc Book Trucks, Inc.*, 484 F.3d 426, 429 (6th Cir. 2007). The simple fact is that when measured against these factors, or any other indicia of reliability, the Carlson opinions addressed here do not pass muster.

**A.   The Opinions at Issue**

**1.   Inadequate Testing**

In his expert report, Carlson opined that the subject tire was "defective in design as it was inadequately tested." (See Report of Denis Carlson dated February 29, 2012, attached hereto as Exhibit 3). The report, however, provided no basis or evidentiary support for such a contention. And at his deposition, Carlson essentially abandoned the opinion. He admits that his claim is not based on any information regarding the actual testing performed by Bridgestone on its Dueler tires. (See Exhibit 2 at pp. 77-78). In fact, Carlson concedes that he has not seen those test results and doesn't even know what testing was performed on the subject tire:

> Q.   So is it fair to say you don't know specifically what testing Bridgestone does and relies upon with regard to tire aging and tire age resistance?
>
> A.   Well, I don't know what was done on this specific tire.
>
> \*\*\*
>
> Q.   As you sit here today, with regard to that opinion you are not relying on any specific test results that you believe show an inadequacy in results?



4814-4337-6145.1

5

|   |   |   |
|---|---|---|
| 1 | A. | Correct. |
| 2 | Q. | Okay. So what you are really saying is there's more |
| 3 |    | information that you'd like to have and evaluate? |
| 4 | A. | Largely, yes. |

(See *id.* at pp. 78-81).

Carlson claims to be *generally* aware of the *types* of tests that *can be* performed, but again he doesn't know if those tests were performed here and, if they were, what the results were. (See *id.*). He also acknowledges that he has information from other cases that Bridgestone does, in fact, conduct appropriate tests for pertinent issues, such as aging resistance. (See *id.*).

Ultimately, Carlson is unable to offer his testing opinion with any certainty. Half-formed, unsupported opinions such as this, based only on speculation and guesswork, have no place at trial. *California ex. Rel. Brown v. Safeway, Inc.,* 615 F.3d 1171, 1181 n.4 (9th Cir. 2010) ("'An expert's opinions that are without factual basis and are based on speculation or conjecture' are inadmissible at trial . . . .") (quoting *Major League Baseball Properties, Inc. v. Salvino, Inc.*, 542 F.3d 290, 311 (2d Cir. 2008).

### 2. Belt Joint Defect

Carlson claims that a "joint" or splice in the tire's steel belt is defective, however, his belt joint opinion is supported by none of the *Daubert* indicia of reliability. (See Exhibit 1, p. 150). Carlson acknowledges that he has never personally conducted any testing of the effect of belt joints in the allegedly defective condition he identifies. (See *id.* at p. 151). Carlson could not identify a single peer-reviewed paper that supports his opinion that a so-called "dog-eared" belt splice can cause a tread belt separation. (See *id.* at pp. 152-53). Indeed, the only published testing that Carlson is aware of is actually contrary to his opinion. (See *id.* at pp. 151-52).

And when asked to identify the community of experts who generally accept his belt joint opinion, Carlson simply identified four individuals who, like him, make their living testifying against tire companies. But he then admitted:



<100><100><100><100><100><100><100><100>

<100>
<100><100>
<100>
<100>

<100>

<100>


<100>

<100>

<100>

<100>


<100>

<100>


<100>


<100>


<100>

<100>

<100>
<100>


<100>


<100>


<100>


<100>


<100>

<100>

<100>


<100>

Q. Now outside of those people that have testified against tire companies for a living, can you identify any tire science group, tire technology group that has indicated the general acceptance of the proposition that a condition of that magnitude is a cause of tread/belt separation?

A. No.

(See *id*. at pp. 151-54).

In a futile attempt to salvage his belt joint opinion, Carlson purported to possess certain knowledge that other tire companies' specifications indicate that this type of joint condition would be somehow unacceptable in their tires. However, when pressed, Carlson refused to produce or specifically identify those specifications, saying he "saw some in open court," but is not allowed to discuss them in any detail and can't bring them to show the jury in this case because they "are all under Protective Order."[2] (See *id*. at p. 150).

Carlson's clear objective is to suggest, "I know what your competitors do, and what you do is inferior." But there is no factual support for such an inference and no admissible basis for such a conclusion. More importantly, there is no way for a defendant to refute what Carlson alludes to when it has been unable to even probe his knowledge of the subject and any limitation to that knowledge. It is improper for Carlson to bolster his credibility by veiled reference to a certain breadth of knowledge and then refuse to discuss that information in detail.

### 3. Skim Stock Aging Defect

Carlson includes among his defect contentions a claim that the skim stock rubber that coats the steel belts of the subject tire was defective in its aging resistance. His methodology behind that conclusion involves his subjective observation that the tire exhibited excessive "cracking" in the skim stock and on the sidewall. Not only is Carlson's

---

[2] Carlson acknowledges that he "do[esn't] know one way or another whether [the joint] is outside of Bridgestone's specifications for belt joints." (See Exhibit 2 at p. 151).



4814-4337-6145.1                                                    7

aging resistance defect theory unrecognized by the scientific community, but his methodology for identifying this alleged "defect" is entirely without support:

> Q. Okay. Now, in your evaluation of this cracking we talked about earlier in the skim stock of the tire, did you use any external standard to evaluate the extent of that cracking?
>
> A. No.
>
> Q. Is there any external standard existing to evaluate that nature of that cracking?
>
> A. No.
>
> Q. So it's a subjective evaluation on your part?
>
> A. I would say so.

(See *id*. at pp. 156-57).

Carlson essentially concludes that the cracking "defect" he observed in the subject tire is caused *either* by excessive air permeation through the tire's inner liner or an inadequate antidegradant package in the rubber compound. However, he isn't able to conclude which of these alleged defects is causative of the cracking appearance in the subject tire, and concedes that "stress risers" could also be responsible for the appearance. (See *id*. at p. 157).

To address aging degradation in a tire's skim stock, tire manufacturers will employ a particular package of antidegradant chemicals during the rubber compounding and mixing processes. Carlson has opined that in addition to cracking, his other criteria from which he concludes that the antidegradant package employed is inadequate is the presence of "fretting corrosion" in the belts. (See Deposition of Dennis Carlson in *Rosenthal v. Ford Motor Company, et al.* taken March 28, 2006 and March 28, 2008, at p. 450, attached hereto as Exhibit 4). However, Carlson found no fretting corrosion in the tire here:

> Q. Okay. Now, did you observe any evidence of fretting corrosion in this tire?

| | | |
|---|---|---|
| 1 | A. | There's corrosion in the belts that we have here. I don't |
| 2 | | remember fretting corrosion, but there was corrosion. |
| 3 | Q. | All right. So did you reach a conclusion one way or another |
| 4 | | about whether there was fretting corrosion in there or not? |
| 5 | A. | I don't recall any, no. |

(See Exhibit 2 at p. 156).

In addition to the admitted lack of physical evidence, Carlson also has no information or testing of his own upon which to base his skim defect methodology:

| | | |
|---|---|---|
| 9 | Q. | Have you ever done any aging testing of Bridgestone Dueler |
| 10 | | tires? |
| 11 | A. | No. |
| 12 | *** | |
| 13 | Q. | Have you ever done any inner liner permeation testing of any |
| 14 | | Bridgestone Dueler tires? |
| 15 | A. | No. |
| 16 | *** | |
| 17 | Q. | Mr. Carlson, have you ever done any inner liner permeation |
| 18 | | testing of any Bridgestone brand tire? |
| 19 | A. | No. |
| 20 | Q. | Have you ever done any inner liner performance testing of |
| 21 | | any Bridgestone brand tire? |
| 22 | A. | No. |
| 23 | Q. | Have you ever done any air retention testing of any |
| 24 | | Bridgestone brand tire? |
| 25 | A. | No. |
| 26 | Q. | Have you ever done any aging tests of any components of any |
| 27 | | Bridgestone brand tire? |
| 28 | A. | No. |

(See *id.* at pp. 85-87).

Carlson purports to offer the opinion that the antidegradant package used in the subject tire was defective, however, at deposition he conceded that he is simply unable to support that opinion:

> Q. Are you critical of the antidegradant package in the belt skim stock of this tire?
>
> A. Just as - - I was hoping to get the specs on that, but I haven't gotten them yet, so I'm not sure I can make an opinion about that.
>
> Q. So you don't have an opinion about that as you sit here today, correct?
>
> A. No. Indications are that it aged prematurely, but I can't tell you the percentage from the inner liner or the antidegradant package or the stress risers.

(See *id.* at p. 157).

Tire rubber compounds are developed by chemists and tire compounders. But Carlson is neither a chemist nor a rubber compounder. (See *id.* at pp. 157-58). He has no experience as a tire compounder either for Michelin or any other steel-belted radial tire manufacturer. (See *id*. at p. 158). Moreover, Carlson has never designed or formulated the rubber compound formula or skim stock formula for any steel-belted radial tire. (See *id.*). He was actually kept away from the Michelin rubber compound formulas while at MARC and never saw the complete rubber compound formula for any of Michelin's tires. (See *id.* at pp. 158-59).

Though Carlson proposes to offer an opinion on the subject tire's aging resistance, he is simply not qualified to opine regarding the antidegradant/aging resistance in the subject tire. First, he has never conducted an evaluation of an antidegradant package or designed an antidegradant package in a steel-belted radial tire. (See *id.* at pp. 157-59). Second, the experience he does have with MARC is irrelevant because he does not know

the antidegradant package used in Michelin tires while he was there. (See *id.* at pp. 158-59). It was never his job to determine the type or levels of antidegradants for any rubber compound in a steel-belted radial tire. (See *id.*). Third, Carlson has never personally tested or analyzed the antidegradant package in any steel-belted radial tire at all, in order to determine its effect on tire durability. (See *id.*).

With all that as a backdrop, it is no wonder that Carlson has had a very similar antidegradant opinion excluded by a federal court in Mississippi. (See Ruling on Cooper Tire's Motion for Summary Judgment in *Bradley, et al. v. Cooper Tire & Rubber Co., et al.* (D. Miss. Aug. 27, 2007) at p. 11, attached hereto as Exhibit 5).

### 4. Nylon Cap Ply

In the final opinion addressed by this motion, Carlson provides his standard opinion that the subject tire is defective in design because it does not incorporate a component called a nylon cap ply. He has offered this opinion many times and against many tire manufacturers, including Firestone, Cooper Tire, Continental General Tire, Goodyear, and possibly Hankook and Kumho. (See Exhibit 2 at pp. 266-67). As he acknowledges, no standard in the world suggests or requires the use of nylon cap plies. (See Exhibit 4 at p. 141). Instead, this opinion that cap plies are necessary arises only in Carlson's litigation consulting. (See Deposition of Dennis Carlson in *Wands v. Bridgestone Firestone* taken October 29, 2008, at p. 168, attached hereto as Exhibit 6).

Carlson admits that not all steel-belted radial tires without a nylon cap ply are defective, and even that not all tires without a nylon cap ply that sustain tread/belt detachments are defective. (See *id.* at p. 143; Deposition of Dennis Carlson in *Clark v. Bridgestone Firestone, et al.* taken January 18, 2010, at p. 238, attached hereto as Exhibit 7). He also concedes that the opposite is true: cap plies do not completely prevent tread/belt separations and that tires *with* nylon cap plies can be defective and unreasonably dangerous. (See Exhibit 4 at pp. 146–47; Deposition of Dennis Carlson in *Vargas v. Bridgestone Firestone, et al.* taken April 24, 2007, at p. 297, attached hereto as Exhibit 8). In fact, he has seen tires with nylon cap plies fail catastrophically before the tread wore

out, including failure of the sidewall, the bead area, and by tread/belt separation and detachment as in this case. (See Exhibit 8 at pp. 306–07). For instance, one Uniroyal Goodrich tire with a nylon cap ply that he has seen sustained a tread/belt separation and detachment, and he testified that the tire was defective. (See *id.* at pp. 288–89). Indeed, he testified that another Uniroyal tire with two nylon cap plies was defective in design. (See *id.* at p. 289). Carlson testified that he has seen Yokohama, Kumho Tire, Toyo, and Dunlop tires that contained one or even two nylon cap plies, but still sustained tread/belt separations and were, according to him, defectively designed. (See *id.* at 289–97).

Though Carlson has testified regarding his nylon cap ply opinion on many occasions since, when he was actually still in the tire industry with MARC, he never expressed the opinion that a Michelin tire was defective because it did not contain a nylon cap ply, even though not all Michelin steel-belted radial tires used a cap ply. (See *id.* at p. 270). Still, he never communicated his nylon cap ply defect opinion to the National Highway Traffic Safety Administration or to Ford Motor Company while at MARC, though Michelin sold tires without cap plies to Ford. (See *id.* at pp. 278–79).

Carlson's nylon cap ply theory is truly based solely upon his own subjective, litigation-born belief that cap plies are beneficial. He has never done any field tests with tires with nylon cap plies. (See *id.* at p. 276). He has never done any impact testing of tires with nylon cap plies. (See *id.* at p. 301). He has never done overdeflection testing of tires with nylon cap plies. (See *id.* at p. 302). Carlson has never tested steel-belted radial tires with nylon cap plies to see if they experience tread/belt separations and detachments. (See *id.* at p. 277). He has never done any testing or scientific study to determine what effect, if any, a nylon cap ply would have in prolonging tire failure. (See *id.* at p. 330).

As is the case with his skim stock opinion, Carlson proposes to offer a nylon cap ply opinion, but is wholly unqualified to do so. He has absolutely no background or training in the design or manufacturing of a steel-belted radial tire incorporating a nylon cap ply. (Deposition of Dennis Carlson in *Hernandez v. Bridgestone Firestone, et al.* taken September 10, 2008 and October 14, 2008, at p. 138, attached hereto as Exhibit 9). Carlson



has never built a tire with a nylon cap ply, designed any tire incorporating a nylon cap ply, or even prepared a design specification or drawing for a tire with a nylon cap ply. (See *id.* at pp. 138–39; Exhibit 8 at p. 270). Of the tires he did help design while at MARC, he acknowledges none of those had cap plies. (See Exhibit 8 at p. 277). Still, he does not believe any of those tires were defective for failing to incorporate a nylon cap ply. (See *id.*) During his time at MARC, Carlson never analyzed a tire's design to determine whether it was defective without a nylon cap ply. (See Exhibit 9 at pp. 233-34). He was never personally involved in testing tires with nylon cap plies at MARC, and since leaving in 1987, he has not done any testing regarding nylon cap plies, including any comparative testing of tires with and without nylon cap plies. (See Exhibit 8 at p. 276). Thus, he must concede that his nylon cap ply opinion is not based on any testing he has personally performed, either at MARC or since he left. (See Exhibit 4 at 139; Exhibit 8 at pp. 276–77).

Just last year, the United States District Court for the Northern District of Texas excluded Carlson's identical cap ply opinion in a tire defect case against Goodyear. *Moore v. The Goodyear Tire & Rubber Co.*, 2011 U.S. Dist. LEXIS 59403 (N.D. Tex. Jun. 2, 2011). After a thorough explanation of Carlson's cap ply opinion and all bases therefore, the Court concluded, "A less scientific approach to arriving at a design defect opinion would be hard to imagine." *Id.* at *10-*13. During his deposition in that case, "Carlson acknowledged that there was no methodology that would support his nylon overlay opinion." *Id.* at *13.

In another recent tire failure case, the United States District Court for the Western District of Texas also recognized the lack of reliable support for this very nylon cap ply opinion when it refused to permit the plaintiff's designated tire expert to offer it at trial against Michelin:

> Notwithstanding his admission as a tire expert, Osborne may not offer expert testimony regarding his theory on 'nylon cap ply.' In stark contrast to his other statements, Osborne supplies no evidentiary basis to support his contention that all tires lacking a 'nylon cap ply' harbor a design defect. Rather, this testimony

4814-4337-6145.1                                    13

echoes the caution of prior holdings concerning 'leaping from an accepted scientific premise to an unsupported one.'

*Vigil v. Michelin N. Am., Inc.,* 2007 WL 2778233, at *6 (W.D. Tex. Aug. 23, 2007).[3]

Carlson's conclusory cap ply opinion in this case suffers from the same inadequacies as his excluded opinion in *Moore v. Goodyear* and the opinions barred in *Vigil, McCool, Smith* and *Cruz* – it is unsupported by any independent testing, any objective technical or scientific analysis or principles, or any logical process. It is based only on conjecture and should similarly be excluded from the trial in this case.

**B.     The Unreliability of the Opinions at Issue**

Whether expert opinion testimony is supported by an adequate basis and is admissible is a matter of law to be determined by the trial judge. *Johnson v. Manitowoc Book Trucks, Inc.*, 484 F.3d 426, 429 (6th Cir. 2007); *see Hayes v. MTD Products, Inc.*, 518 F. Supp. 2d 898, 899 (W.D. Ky. 2007). When faced with a proffer of expert testimony, Federal Rules of Evidence 702 and 104(a) require that the district court determine at the outset whether the reasoning or methodology underlying the testimony satisfies the *Daubert* test. *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 592 (1993); *Sigler v. American Honda Motor Co.,* 532 F.3d 469, 478 (6th Cir. 2008); *Nelson v. Tennessee Gas Pipeline Co.*, 243 F.3d 244, 250 (6th Cir. 2001). The first issue to be resolved in determining the admissibility of expert testimony is whether the proffered testimony is "scientific knowledge." *Daubert*, 509 U.S. at 592–93; *see Pride v. BIC Corp.*, 218 F.3d 566, 577 (6th Cir. 2000). This task requires that the trial court consider whether the

---

[3] *See also Cruz v. Bridgestone/Firestone North American Tire, LLC,* 2008 WL 5598439 (D. N.M. August 29, 2008); *Smith v. The Goodyear Tire & Rubber Company,* 495 F.3d 224 (5th Cir. 2007); *McCool v. Bridgestone/Firestone N. Am. Tire, LLC,* 222 Fed. Appx. 847 (11th Cir. 2007). In *McCool,* plaintiffs' designated expert had performed over 3,000 failure analyses on tires, but not a single test related to his nylon cap ply theory. The district court found that the expert's methodology was "not sufficiently reliable as determined by the sort of inquiry mandated by *Daubert*" because his "theory concerning the nylon cap ply defect has not been tested, and has not been subject to peer review and publication." *Id.* at 854. The Eleventh Circuit affirmed the district court and noted that "[t]he absence of any documentary evidence, such as peer-reviewed articles or scientific studies or testing, is a particularly glaring omission given that [the witness] conducted no studies or testing of his own and had never published his nylon cap ply theory for peer review." *Id.* at 856. Like the designated expert witnesses in *McCool*, in this case, Carlson is proffering an opinion that is subjective and conclusory and, therefore, unreliable and inadmissible.



testimony has been subjected to the appropriate methodology, as opposed to mere subjective belief or unsupported speculation. Fed. R. Evid. 702; *Demarre v. Toyota Motor Corp.*, 37 F. Supp. 2d 959, 961 (W.D. Ky. 1999) ("An expert opinion that is based on scientifically valid principles will satisfy Fed. R. Evid. 702; an expert's subjective belief or unsupported speculation will not"). "[A] key question to be answered . . . will be whether [a theory] can be (and has been) tested." *Daubert*, 509 U.S. at 593*; see also United States v. Bynum*, 3 F.3d 769, 773 (4th Cir. 1993), *cert. denied,* 510 U.S. 1132 (1994) (scientific knowledge "is generated through the scientific method – subjecting testable hypotheses to the crucible of experiment in an effort to disprove them"). When inquiring into the reliability of the expert's testing, the court should also view "testimony prepared solely for purposes of litigation . . . with some caution" and then "apply the *Daubert* factors with greater rigor." *Johnson v. Manitowoc Boom Trucks, Inc.*, 484 F.3d 426, 434–35 (6th Cir. 2007).

The basic object of *Daubert* is to "ensure that the testimony has a 'basis in the knowledge and experience of' the expert's discipline and that the expert exhibits 'the same level of intellectual rigor'" expected of an expert outside of the courtroom.'" *Multimatic, Inc. v. Faurecia Interior Sys. USA, Inc.*, 358 Fed. App. 643, 654 (6th Cir. 2009) (quoting *Kumho Tire*, 526 U.S. at 152). One district court noted that "[e]xperts cannot float their conclusions on cushions of air; they must rest those conclusions upon foundations built from reliable scientific explanation." *Navarro v. Fuji Heavy Industries, Ltd.*, 925 F. Supp. 1323, 1328 (N.D. Ill. 1996), *aff'd*, 117 F.3d 1027 (7th Cir.), *cert. denied*, 118 S. Ct. 600 (1997).

Other courts have likewise recognized that expert conclusions are not to be accepted simply because "an expert says it is so." *See Viterbo v. Dow Chem. Co.*, 826 F.2d 420, 424 (5th Cir. 1987); *see also Merrell Dow Pharmaceuticals, Inc. v. Havner*, 953 S.W.2d 706, 712 (Tex. 1997). When the expert "br[ings] to court little more than his credentials and a subjective opinion," this is not evidence that would support a judgment. *Viterbo*, 826 F.2d at 421. The *Viterbo* court affirmed summary judgment and the exclusion of expert

testimony that was unreliable, holding that "[i]f an opinion is fundamentally unsupported, then it offers no expert assistance to the jury." *Id.* at 422; *see J.B. Hunt Transp. Inc. v. General Motors Corp.*, 243 F.3d 441, 444 (8th Cir. 2001) ("Expert testimony that is speculative is not competent proof and contributes nothing to a legally sufficient evidentiary basis."); *Turpin v. Merrell Dow Pharmaceuticals, Inc.*, 959 F.2d 1349, 1360 (6th Cir. 1992) (holding evidence legally insufficient in pharmaceutical case when no understandable scientific basis was stated).

The United States Supreme Court enunciated the same principle in *General Electric Co. v. Joiner*:

> [N]othing in either *Daubert* or the Federal Rules of Evidence requires a district court to admit opinion evidence which is connected to existing data only by the *ipse dixit* of the expert. A court may conclude that there is simply too great an analytical gap between the data and the opinion proffered.

522 U.S. 136, 146 (1997); *see Nelson v. Tennessee Gas Pipeline Co.*, 243 F.3d 244, 254 (6th Cir. 2001). The essential failing of the opinions at issue here is that they show no adherence to such standards. The unreliability of Carlson's reasoning and methodology, as well as any opinions resulting from them, are obvious. They are not rooted in testing, accepted principles, or any form of peer review. They are, in fact, flatly contradicted by other data as well as by the opinions of others in the field.

Carlson's opinions here are of exactly the type condemned by the Supreme Court in *Kumho Tire*. Carlson's methods and resulting conclusions here, like those he espoused in *Kumho Tire*, are standardless and subjective. *See Kumho Tire*, 526 U.S. at 154–57. As in *Kumho Tire*, there is no validation of Carlson's approach or indication that it is generally accepted by the community of tire experts. *Id.* at 157.

Courts have not hesitated to exclude expert testimony concerning alleged tire defects under *Daubert* where the expert testimony is not reliable. *See, e.g., Kumho Tire Co. v. Carmichael*, 526 U.S. 137 (1999); *Moore v. Goodyear Tire & Rubber Co.*, 2011 U.S. Dist. LEXIS 59403 (N.D. Tex. 2011); *Smith v. Goodyear Tire & Rubber Co.*, 495 F.3d 224 (5th Cir. 2007); *McCool v. Bridgestone/Firestone N. Am. Tire, LLC,* 222 Fed. Appx. 847,

2007 WL 761 804 (11th Cir. 2007); *Allen v. LTV Steel Co.,* No. 02-4094, 2003 WL 21461633 (7th Cir. June 17, 2003); *Williams v. Michelin N. Am., Inc.* 381 F. Supp. 2d 1351 (M.D. Fla. 2005); *Hauck v. Michelin N. Am., Inc.,* 343 F. Supp. 2d 976 (D. Colo. 2004); *Rivera-Pomales v. Bridgestone/Firestone, Inc.,* 217 F.R.D. 290 (D.P.R. 2003); *Prince v. Michelin N. Am., Inc.,* 248 F. Supp. 2d 900 (W.D. Mo. 2003); *Diviero v. Uniroyal Goodrich Tire Co.,* 919 F. Supp. 1355 (D. Ariz. 1996), *aff'd,* 114 F.3d 851 (9th Cir. 1997); *Meyerhoff v. Michelin Tire Corp.*, 852 F.Supp. 933 (D. Kan. 1994), *aff'd,* 70 F.3d 1175 (10th Cir. 1995); *Cooper Tire & Rubber Co. v. Mendez*, 204 S.W.3d 797 (Tex. 2006); *Goodyear Tire & Rubber Co. v. Rios*, 143 S.W.3d 107 (Tex. App. 2004); *Mitchell v. Uniroyal Goodrich Tire Co.*, 666 So.2d 727 (La. Ct. App. 1995); *Clement v. Griffin*, 634 So.2d 412 (La. Ct. App. 1994).

The speculative and unsupported opinions that Carlson attempts to offer in this litigation suffer from the same shortcomings as those stricken above. The opinions are untested, without peer support among any recognized community of tire experts, and contradicted by other available evidence which Carlson either ignored or failed to consider. Moreover, the opinions lack a legitimate foundation and Carlson is unable to describe any logical process by which he arrived at them. In short, the opinions lack any of the validation mandated by *Daubert* and, thus, they contribute "nothing to a legally sufficient evidentiary basis." *J.B. Hunt Transp. Inc.*, 243 F.3d at 444. Carlson's defect opinions must be excluded.

### III.   RULE 104(a) HEARING

Bridgestone Americas believes that the evidence set forth in this memorandum and exhibits overwhelmingly supports granting the *Daubert* aspects of this motion. However, should the Court have any doubt that the unreliability and inadequacy of the opinions at issue is fully demonstrated in this memorandum and its exhibits, Bridgestone Americas requests that the Court conduct a 104(a) hearing to inquire further into the specific opinions at issue here.

Federal Rule of Evidence 104(a) provides that "Preliminary questions concerning the qualifications of a person to be a witness . . . shall be determined by the court . . . ." Fed. R. Evid. 104(a). Rule 104 then specifies that "Hearings on . . . preliminary matters shall be so conducted when the interests of justice require . . . " Fed. R. Evid. 104(c). While the decision to conduct a Rule 104(a) hearing lies within the discretion of the trial court, *Kumho Tire* instructs that a hearing is appropriate in "more complex cases where cause for questioning the expert's reliability arises." *Kumho Tire*, 526 U.S. at 152.

## IV. CONCLUSION

Carlson's testimony and opinions at issue in this motion are unsupported, unreliable and lacking in foundation in science or any validated methodology. These opinions should be excluded.

DATED this 16th day of November, 2012.

**LEWIS BRISBOIS BISGAARD & SMITH LLP**


By ___s/ Robert C. Ashley___
    Matthew D. Kleifield
    Robert C. Ashley
    Attorneys for Defendants Bridgestone
    Americas Tire Operations, LLC and
    Bridgestone Americas, Inc.

I hereby certify that on November 16, 2012, I electronically transmitted this document to the Clerk's office using the ECF System for filing and transmittal of a Notice of Electronic Filing to the following ECF registrants:

Honorable David C Bury
United States District Court
Evo A. DeConcini U.S. Courthouse
405 W. Congress Street, Suite 1500
Tucson, Arizona 85701-5010

Barry L. Bellovin, Esq.
B. Kathleen Gilbertson
Bellovin & Karnas, P.C.
P. O. Box 3092
Tucson, Arizona 85702
Attorneys for Plaintiffs



4814-4337-6145.1                                    18

| | |
|---|---|
| 1 | Richard D. Morrison, Esq. |
| 2 | Beasley Allen Crow Methvin Portis & Miles PC |
| | P. O. Box 4160 |
| 3 | Montgomery, AL 36103 |
| | *Pro Hac Vice* |
| 4 | Attorneys for Plaintiffs |
| 5 | |
| | Craig W. Phillips, Esq. |
| 6 | Lewis and Roca, LLP |
| | 40 North Central Avenue |
| 7 | 19th Floor |
| 8 | Phoenix, Arizona 85004-4429 |
| | Attorneys for Defendant Wal-Mart Stores, Inc. |
| 9 | |
| 10 | George Brandon, Esq. |
| | Matthew J. Ohre, Esq. |
| 11 | Gregory A. Davis, Esq. |
| | SQUIRE, SANDERS & DEMPSEY (US) LLP |
| 12 | 1 East Washington Street, Suite 2700 |
| 13 | Phoenix, Arizona 85004-2556 |
| | Attorneys for Defendant Bridgestone Corporation |
| 14 | |
| 15 | Roger M. Gold, Esq. |
| | SQUIRE SANDERS (US) LLP |
| 16 | 4900 Key Tower, 127 Public Square |
| | Cleveland, OH 44114 |
| 17 | Attorneys for Defendant Bridgestone Corporation |
| 18 | |
| 19 | Joseph C. Weinstein |
| | SQUIRE SANDERS (US) LLP |
| 20 | 4900 Key Tower |
| | 127 Public Square |
| 21 | Cleveland, OH 44114 |
| 22 | *Pro Hac Vice* |
| | Attorneys for Defendant Bridgestone Corporation |
| 23 | |
| 24 | Colin Smith, Esq. |
| | Holland & Knight LLP |
| 25 | 131 S. Dearborn Street, 30th Floor |
| | Chicago, IL 60603 |
| 26 | Attorneys for Defendants Bridgestone Americas |
| | Tire Operations, LLC and Bridgestone Americas, Inc. |
| 27 | |
| 28 | |

LEWIS BRISBOIS BISGAARD & SMITH LLP ATTORNEYS AT LAW

4814-4337-6145.1                                     19

1  Marc R. Brosseau, Esq.
   BROSSEAU BARTLETT SESERMAN, LLC
2  6455 South Yosemite Street, Suite 750
3  Greenwood Village, CO 80111
   *Pro Hac Vice*
4  Attorneys for Defendants Bridgestone Americas
5  Tire Operations, LLC and Bridgestone Americas, Inc.

6   s/ Tonya L. Mitchell

4814-4337-6145.1                             20